United States District Court
Southern District of Texas
**ENTERED**
June 24, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BEATRICE STEWART, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-19-5008 |
| § | |
| METROPOLITAN LLOYDS INSURANCE § | |
| COMPANY OF TEXAS, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND OPINION

This is an insurance coverage dispute. Metropolitan Lloyds Insurance Company of Texas issued Beatrice Stewart a homeowner's insurance policy that covered certain kinds of damage to Stewart's home and belongings. In December 2017, part of Stewart's floor sank, after termites and rot caused some joists underneath the home to deteriorate and break. Stewart filed a claim for payment. Metropolitan determined that Stewart's policy did not cover the damage because it was not within the policy definition of "collapse." Stewart sued, alleging breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code and the Texas Deceptive Trade Practice and Consumer Protection Act. The parties cross-moved for summary judgment on whether the policy covered the damage.

Based on the parties' motions and briefs, the summary judgment record, the arguments of counsel, and the applicable law, the court grants Metropolitan's motion and denies Stewart's cross-motion, and enters final judgment by separate order. The reasons are explained in detail below.

## I. Background

### A. The Damage to the Home

Beatrice Stewart purchased her homeowner's insurance policy from Metropolitan Lloyds Insurance Company of Texas, effective from March 2017 to March 2018. (Docket Entry No. 16-1 at 2). Stewart testified that while she was "lying in bed one evening," she "heard a bang." (Docket Entry No. 17-1 at 3). The next day, Stewart noticed that the floor near her bathroom and hallway had "sunken a little bit" and the house was sitting lower. (*Id.*). Stewart cut a hole in her floor to look underneath and saw that some of the joists beneath the floor had collapsed. (*Id.* at 3–4). Her subfloor, walls, and doors had also been damaged, though her floor remained in place. (*Id.* at 3–5, 7–8). Stewart testified that "the walls fell with cracks and the doors [were] off [their] hinges," but she admitted that "the house never completely fell down." (*Id.* at 4). Stewart filed a claim under her policy. (*Id.* at 11).

Metropolitan hired a forensic engineer, Lan Vo, to inspect the damage. Mr. Vo found that the floor joists had deteriorated, two floor joists had broken, and the subfloor decking had deteriorated and become soft. (Docket Entry No. 16-3 at 4). Mr. Vo also found that there were insect tunnels in the subfloor decking and floor joists, but no vapor barrier between the soil and the house. (*Id.*). Based on his findings, Mr. Vo concluded that:

> The rot [in the] floor joists and subfloor decking are caused by a combination of termite damage and exposure to moisture over the lifespan of the structure, [which] resulted in broken and displaced floor joists and the unlevel floor.
>
> The excess moisture in [the] soil is caused by inadequate ground slopes and the lack of vapor barrier.

(*Id.*).

Stewart also hired an expert, John Pfister, to inspect the property. Pfister did not dispute that termite damage and wood rot caused the damage. He found that the lack of vapor barrier was consistent with other homes constructed at the same time and did not cause the subfloor damage. (Docket Entry No. 16-4 at 1–2).

Metropolitan denied Stewart's claim, concluding that her policy did not cover the damage. Stewart sued in state court, alleging breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code and the Texas Deceptive Trade Practice and Consumer Protection Act. (Docket Entry No. 1-1 at 4–6). Metropolitan removed to federal court, and the parties cross-moved for summary judgment on whether the policy covers the damage. (Docket Entry Nos. 1, 16, 17). Metropolitan replied. (Docket Entry No. 18).

**B.     The Policy Language**

The policy addresses general dwelling damage in a section titled "Section I – Losses We Cover." (Docket Entry No. 16-1 at 18). The provision states:

> COVERAGE A – DWELLING AND COVERAGE B – PRIVATE STRUCTURES
>
> We will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A and B, except as excluded in SECTION 1 – LOSSES WE DO NOT COVER.

(*Id.*). The policy excludes some losses from coverage in the following section:

> SECTION I – LOSSES WE DO NOT COVER
>
> . . .
>
> 1.     We do not insure under any Section I coverage for any loss which would not have happened in the absence of one or more of the following excluded events. . . .
>
> . . .

3

>K.   Collapse, except as granted under SECTION I – ADDITIONAL COVERAGES for Collapse.
>
>. . .
>
>3.   We do not cover loss or damage to the property described in Coverage A and Coverage B which results directly or indirectly from any of the following:
>
>A.   wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;
>
>. . .
>
>E.   birds, vermin, rodents or insects

(*Id.* at 19–22).

Although the policy excludes coverage "for any loss which would not have happened in the absence of" collapse, it contains a section addressing additional coverage for "collapse." (Docket Entry No. 16-1 at 16, 21). The provision states:

>16.   Collapse. We will pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused only by one or more of the following:
>
>A.   perils described in SECTION I – BROAD NAMED PERILS;
>
>B.   hidden decay of the structure;
>
>C.   hidden insect or hidden vermin damage;
>
>D.   weight of contents, equipment, animals or people;
>
>E.   weight of ice, snow, sleet or rain which collects on a roof; or
>
>F.   use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.
>
>. . .
>Loss to [a] . . . foundation . . . is not included under items B., C., D., E., and F. unless the loss is a direct result of the collapse of a building.

4

> Collapse means an abrupt falling down or caving in of a building or any part of a building. Collapse does not include settling, cracking, sagging, bowing, bending, leaning, shrinking, bulging or expansion. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(*Id.* at 16).

The policy language and record is examined under the applicable legal standards.

## II.  The Legal Standards

### A.  Summary Judgment

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd on Behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 610 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating'" that "there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material

fact, but it need not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). "If the moving party fails to meet [its] initial burden, [the summary judgment motion] must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

    **B.**    **The Interpretation of Insurance Contracts**

Under Texas law, insurance contracts are interpreted under general rules of contract construction, "and words and phrases contained therein should be given their plain and ordinary meaning." *See Aggreko, L.L.C. v. Chartis Specialty Ins. Co.*, 942 F.3d 682, 688 (5th Cir. 2019). The court interprets an insurance contract to "effectuate the intent of the parties at the time the contracts were formed." *Laney Chiropractic & Sports Therapy, P.A. v. Nationwide Mut. Ins.*

*Co.*, 866 F.3d 254, 258 (5th Cir. 2017) (quoting *Mid–Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009)).

Interpreting an insurance contract is a legal determination. *See Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 238 (5th Cir. 2016). If an insurance policy is worded so that it can be given only one reasonable construction, it will be enforced as written. *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018) (quoting *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)). Only when an insurance contract is susceptible to more than one reasonable interpretation may the court resort to the rule requiring adoption of the interpretation most favorable to the insured. *Id.* The fact that the parties disagree as to whether there is coverage or the extent of coverage does not create an ambiguity. *Indem. Ins. Co. of N. Am. v. W & T Offshore, Inc.*, 756 F.3d 347, 352 (5th Cir. 2014) (internal quotation omitted). Nor may extrinsic evidence be admitted for the purpose of creating an ambiguity. *Liberty Mut. Ins. Co. v. Servisair, L.L.C.*, 698 F. App'x 770, 773 (5th Cir. 2017).

When an insurance contract is not subject to challenge for ambiguity, its interpretation is a question of law for the court, appropriate for summary judgment. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 842 (5th Cir. 2012) (quoting *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004)). In a suit to recover on an insurance contract, the insured bears the initial burden of showing that there is coverage, while the insurer has the burden of proof as to "the applicability of any exclusions in the policy." *O'Quinn*, 906 F.3d at 367 (quoting *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998)). Language of a policy exclusion or exception to coverage that the insurer claims constitutes an avoidance or an affirmative defense. *See* TEX. INS. CODE § 554.002. If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that the claim is within an exception to the

7

exclusion. *See Vic Mfg. Co.*, 143 F.3d at 193. A court applying the law of a particular state does not limit itself to the cases decided under that law if the contract provisions at issue are identical. *Apache Corp. v. Great Am. Ins. Co.*, 662 F. App'x 252, 255 (5th Cir. 2016).

### III. Analysis

Metropolitan offers three reasons for its coverage denial. Metropolitan first argues that the policy's additional coverage for "collapse" does not cover the damage because there was no "entire collapse" of the building or any part of the building, as required by the policy's collapse section. (Docket Entry No. 16 at 8–9). Second, it argues that the damage was caused not only by insects and hidden decay, but also by moisture from the lack of a vapor barrier, and the policy language states that the collapse must be caused only by one or more of the listed causes, which do not include moisture or vapor. (*Id.* at 13–16). Third, it argues that damage to the joists and foundation is not covered under the policy's collapse provision unless that damage results from a different collapse. (*Id.* at 16).

Stewart argues for coverage only under the policy section's "collapse" additional coverage. (Docket Entry No. 17 at 5–11). She argues that the section of the floor that failed is an entire collapse of that section. Her claim was not merely for the settling or sagging of her floor, but also for the broken and fallen joists, fallen and cracked walls, damaged doors, and cracked sheetrock that resulted. (*Id.* at 6). She also argues that the moisture did not cause the collapse; rather, the moisture contributed to the hidden decay that caused the collapse. (*Id.* at 7–8).

Metropolitan's argument that moisture caused the damage, removing it from coverage because moisture is not listed as a covered cause of collapse, is unpersuasive. The collapse provision states that Metropolitan "will pay for sudden and accidental direct physical loss to

8

covered property involving the entire collapse of a building or any part of a building caused *only* by one or more of the following." (Docket Entry No. 16-1 at 16) (emphasis added). The policy lists covered causes of collapse, which include hidden decay and insect damage, but not moisture or vapor. (*Id.*). Metropolitan cites Mr. Vo's engineering report, stating that the "rot [in the] floor joists and subfloor decking [is] caused by a combination of termite damage and exposure to moisture over the lifespan of the structure," which "resulted in broken and displaced floor joists and the unlevel floor." (Docket Entry No. 16-3 at 4). This report shows that moisture contributed to or caused the hidden decay—a listed cause—but not that the moisture itself directly caused the floor to sink. Hidden decay will almost always be caused by something else, whether moisture, heat, fungus, chemicals, or other causes. Using the cause of the hidden decay to deny collapse coverage would effectively remove "hidden decay" as a covered cause of collapse. The soil moisture, which caused the floor joists to rot and decay, does not prevent coverage under the additional coverage for collapse.

Coverage under the collapse provision turns on whether Stewart's home, or any part of the home, "entirely collapsed." The policy states that it covers "sudden and accidental direct physical loss to covered property involving the *entire collapse* of a building or any part of a building." (Docket Entry No. 16-1 at 16) (emphasis added).

Metropolitan first argues that not only was there was no "entire collapse"; there was not even a "collapse" as the policy defines the term. (Docket Entry No. 16 at 8). The policy defines "collapse" as "an abrupt falling down or caving in of a building or any part of a building"; a "collapse" is not "settling, cracking, sagging, bowing, bending, leaning, shrinking, bulging or expansion." (Docket Entry No. 16-1 at 16). Metropolitan argues that while some of Stewart's flooring may have "sunken or sagged or become soft," that is not an "abrupt falling down or

9

caving in." Metropolitan points to its engineering report, which states that the "floor is unlevel throughout the house." (Docket Entry No. 16-3 at 4). Stewart admits that her "entire home did not collapse to the ground," but she argues that part of the home "fell or caved in." (Docket Entry No. 17 at 7). According to Stewart's testimony, she heard "a loud bang" while she was in bed, and the house was shaking. The engineering report also states that Stewart had "removed and replaced the soft subfloor decking and reinforced the floor joist" before the inspection. (Docket Entry No. 16-3 at 4). The record does not show that any part of Stewart's floor caved in. There was no hole or gap in the floor; it sagged.

Nor does the undisputed evidence in the record show an "entire" collapse. Case law provides some guidance on when there has been an "entire" collapse. In *Jordan v. Allstate Ins. Co.*, 11 Cal. Rptr. 3d 169, 172 (Cal. Ct. App. 2004), the insured filed a claim after noticing that the floorboards in a corner of her living room were "giving way" and a window had fallen out of the wall. The damage had been caused by fungus. *Id.* Allstate rejected her claim, and the insured sued. The appeals court clarified the meaning of "entire collapse." *Id.* at 181–82. The court explained:

> For a building or a portion thereof to sustain an "entire collapse" must mean that it has *entirely* collapsed, that is "wholly," "completely," or "fully." Put another way, to constitute an "entire collapse," there must be a "total collapse." It would make no sense to apply such a description to a collapse that was merely "imminent."

*Id.* at 181 (emphasis in original). The court then held that unresolved factual disputes prevented a finding of no coverage, because the trial court had resolved the issue based on a different policy exclusion and had not determined whether a floor "giving way" or a falling window had been an actual "collapse." *Id.*

Courts have also found that cracking is not enough for an "entire" collapse. *See Andrew v. Allstate Ins. Co.*, No. 3:17-cv-1192 (MPS), 2018 WL 3553341, at *7 (D. Conn. July 24, 2018) (denying coverage when the damage consisted of cracked walls, and collecting cases stating that an "entire collapse" must be an actual collapse, not an imminent collapse); *see also Valls v. Allstate Ins. Co.*, 919 F.3d 739, 745 (2d Cir. 2019) ("Whatever the term 'entire collapse' encompasses, it must entail more than mere 'cracking,' since cracking is expressly excluded under the Policy's provision that '[c]ollapse does not include settling, cracking, shrinking, bulging or expansion.'").

Other courts have found "substantial impairment of the structural integrity of a building" that is "sufficiently comprehensive in scope" to be an entire collapse. *See Maki v. Allstate Ins. Co.*, 320 F. Supp. 3d 380, 384 (D. Conn. 2018) (applying Connecticut law, which defines collapse in the absence of a policy definition as "any substantial impairment of the structural integrity of a building"). But here, Stewart's policy defines the term "collapse," so the court need not define it differently.

Stewart argues that in addition to the floor, there was damage to the joists, walls, doors, sheetrock, kitchen, and bathroom. (Docket Entry No. 17 at 7). She asserts that this "clearly demonstrates that a part of the home fell in or caved in." (*Id.*). But none of the damage to the walls, doors, sheetrock, kitchen, or bathroom involved any of those building parts "entirely" falling or caving in. And although the record shows that some joists underneath the house had broken and fallen, the policy expressly excludes coverage for such foundation damage unless it is caused by a different collapse. (Docket Entry No. 16-1 at 16). The fact that some joists abruptly broke and gave way would create coverage only if that damage was caused by another

11

collapse. This is not supported by the record. The record does not show that Stewart's floor, or part of the floor or house, entirely or totally fell or caved in.

At oral argument, Stewart argued that the word "entire" applies only to the collapse of a building but not to the collapse of part of a building. This is unsupported by the policy language and is an unreasonable interpretation of the policy. The additional coverage for collapse states that it covers damage "involving the entire collapse of a building or any part of a building." (*Id.*). The word "entire" modifies "collapse," which applies to the phrase "of a building or any part of a building." If "entire" did not also apply to "any part of a building," neither would the word "collapse," and the phrase "any part of a building" would be meaningless. The policy covers damage caused by collapse to "any part of a building" only when there has been an entire collapse.

The undisputed record evidence shows that part of the floor sank and some floor joists underneath the house broke or cracked; some walls were not plumb with the floor and had cracks; and some doors were off their hinges. Stewart describes the bathroom damage, stating that "[t]he floor was sinking and the bathtub had fallen in," and "[t]he walls were leaning." (Docket Entry No. 17-1 at 7). This damage is similar to sinking and cracking that is not an entire collapse. This damage is unlike part of a house entirely, totally, or completely falling or caving in. The record does not show that the damage amounted to an entire collapse, and it is not covered under the additional coverage for collapse.

Stewart also asserted claims for breach of the duty of good faith and fair dealing, Texas Insurance Code violations, and Texas Deceptive Trade Practice and Consumer Protection Act violations. (Docket Entry No. 1-1 at 4–6). But without coverage or a contract breach, the record cannot support a bad-faith claim or violations of the Texas Insurance Code or the Texas

12

Deceptive Trade Practice and Consumer Protection Act.  *See Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) ("[A]n insured may not prevail on a bad faith claim without first showing that the insurer breached the contract.").  Because the policy does not cover the damage to Stewart's house, summary judgment is granted on all of Stewart's claims.

## IV.     Conclusion

Metropolitan's motion for summary judgment is granted.  (Docket Entry No. 16).  Stewart's cross-motion for summary judgment is denied.  (Docket Entry No. 17).  This case is dismissed, with prejudice.  Final judgment is entered by separate order.

SIGNED on June 24, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge